Virginia **MALDONADO**
**MALDONADO, Plaintiff,**

v.

**Miguel D. LAUSELL, President of the Puerto Rico Telephone Company, in his personal and official capacity; Rafael A. Navarro, Vice President Employee Relations, in his personal and official capacity, and the Puerto Rico Telephone Company,**

v.

**Annie CEIDE.**

**Civ. No. 85–1033 (JP).**

United States District Court,
D. Puerto Rico.

Jan. 22, 1988.

José R. Pérez Hernández, Old San Juan, P.R., for Maldonado.

Salvador Antonetti, Fiddler, González & Rodríguez, San Juan, P.R., for P.R. Telephone Co.

Saldaña, Rey, Morán & Alvarado, Santurce, P.R., for Miguel Lausell.

## OPINION AND ORDER

PIERAS, District Judge.

This is an action for injunctive relief and damages brought pursuant to 42 U.S.C. § 1983. The plaintiff, Virginia Maldonado Maldonado, was dismissed from her job in the personnel department of the Puerto Rico Telephone Company (PRTC). Maldonado alleges that she was discharged because of her affiliation with the New Progressive Party (NPP). Defendants, Miguel D. Lausell and Rafael A. Navarro are sued in both their personal and official capacities as, respectively, President and Vice President for employee relations at the PRTC.[1] Lausell, Navarro, and the PRTC itself, which is also a named defendant, have countered by charging that Maldonado was fired because she had been illegally recruited. Maldonado's claims, if borne out, would state claims for violation of her first amendment rights to free speech and asso-

ciation, and her fourteenth amendment right to be free from governmental deprivation of property without due process of law.

Before the Court are the parties' cross-motions for summary judgment. Maldonado bases her motion, as to the fourteenth amendment claim, on the undisputed fact that she was not given a pretermination hearing. Defendants base their fourteenth amendment section of their summary judgment motion on the argument that because Maldonado was illegally hired, she possessed no property interest in her PRTC job, and therefore, no pretermination hearing was constitutionally required. As to the first amendment portion of their claim, defendants argue that because an independent, legitimate reason existed for Maldonado's removal, i.e., her purportedly illegal recruitment, that plaintiff cannot succeed on her free speech and association claim.

For the reasons set forth herein, the Court cannot grant summary judgment to either party. The cross motions are DENIED.

### I. *Factual Background*

The record reveals the following facts. Unless otherwise noted, they stand as undisputed.

As the result of the decision of the Supreme Court of Puerto Rico in *Torres Ponce v. Jiménez*, 113 D.P.R. 58 (1982), PRTC adopted personnel regulations paralleling the Puerto Rico Public Service Personnel Act of 1975, 3 L.P.R.A. § 1302 *et seq.* The regulations were put into effect in April 1983, and set out a procedure by which applicants are to be screened, evaluated, and placed in positions in the telephone company.

Maldonado was hired into the personnel department of PRTC on July 5, 1983. Holding the classification of Interviewer I, Maldonado completed the first ninety days of her tenure on October 4, 1983, and should have, at that point, passed from

---

1. Miguel Lausell has been replaced by Pedro Galarza. When an official is replaced pending resolution of the action, the named official is automatically substituted by the successor in office for the purpose of injunctive relief. Fed. R.Civ.P. 25(d)(i); *Maria Santiago v. CRUV,* 554 F.2d 1210 (1st Cir.1977).

probationary status into the full career civil service. Maldonado was promoted in August 1984, and completed another ninety-day probationary period in that second post. On February 22, 1985, Navarro sent Maldonado a letter dismissing her. The letter stated that the reason for the dismissal was her purportedly illegal recruitment. This case soon followed.

II. *Jurisdiction To Hear this Case as Against the Puerto Rico Telephone Company*

■ The PRTC has raised the defense that this Court is barred from entertaining suit against it by the Eleventh Amendment to the United States Constitution.[2] Whether this Court is berift of jurisdiction depends upon whether the PRTC should be treated as an arm of the state. *Ainsworth Aristocrat Intern. Pty v. Tourism Co.*, 818 F.2d 1034 (1st Cir.1987). The relationship between the PRTC and the Commonwealth is well settled. The PRTC is not immune from suit by virtue of the Eleventh Amendment. *Anaya Serbia v. Lausell*, 646 F.Supp. 1236 (D.P.R.1986). In any event, PRTC waived its immunity by its general appearance in this case and the filing of a third party complaint.[3] *Anaya Serbia*, 646 F.Supp. at 1243 n. 5. This Court is not barred by the Eleventh Amendment from hearing suit against PRTC.

III. *Standard for Summary Judgment*

Federal Rule of Civil Procedure 56(c) provides that summary judgment shall be granted

"if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

The Court must examine the record "in the light most favorable to ... the party opposing the motion." *Poller v. Columbia Broadcasting System*, 368 U.S. 464, 473, 82 S.Ct. 486, 491, 7 L.Ed.2d 458 (1972). Similarly the court must indulge all inferences favorable to the party opposing the motion. These rules must be applied with recognition of the fact that it is the function of summary judgment "to pierce formal allegations of facts in the pleadings ...", and to determine whether further exploration of facts is necessary. The language of Rule 56(c) sets forth a bifurcated standard which the party opposing summary judgment must meet to defeat the motion. He must establish the existence of an issue of fact which is both "genuine" and "material." A material issue is one which affects the outcome of the litigation.

*Hahn v. Sargent*, 523 F.2d 461, 464 (1st Cir.1975) (citations omitted), *cert. denied*, 425 U.S. 904, 96 S.Ct. 1495, 47 L.Ed.2d 754 (1976).

As the Supreme Court has recently amplified, the existence of some alleged factual dispute will not defeat a summary judgment motion; "the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202, 211 (1986) (emphasis in original). Materiality is defined by the substantive law governing the case. 106 S.Ct. at 2510, 91 L.Ed.2d at 211.

**2.** "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens or Subjects of any Foreign State." U.S. Const.Amend. XI

"While the Amendment by its terms does not bar suits against a State by its own citizens, this Court has consistently held that an unconsenting State is immune from suits brought in federal courts by her own citizens as well as by citizens of another State." *Edelman v. Jordan*, 415 U.S. 651, 663–64, 94 S.Ct. 1347, 1355–56, 39 L.Ed.2d 662 (1974).

This "Eleventh-and-a-half" amendment is fully applicable to the Commonwealth of Puerto Rico. *Paul N. Howard Co. v. Puerto Rico Aqueduct Sewer Authority*, 744 F.2d 880 (1st Cir. 1984), *cert. denied*, 469 U.S. 1191, 105 S.Ct. 965, 83 L.Ed.2d 970 (1985); *Ramirez v. Puerto Rico Fire Service*, 715 F.2d 694, 697 (1st Cir.1983); *Ezratty v. Commonwealth of Puerto Rico*, 648 F.2d 770, 776 (1st Cir.1981).

**3.** The third party complaint, against Annie Ceide, was voluntarily dismissed by Lausell and Navarro, but not by PRTC.

**114**

### IV. Plaintiff's Claims and Cross Motions for Summary Judgment

#### A. First Amendment Claim

■ In order to succeed on this claim, Maldonado must show that her political affiliation was the substantial and motivating reason for her termination, and defendants must then fail to prove that there was any other legitimate and non-pretextual reason for ending her employment. *Mt. Healthy City School Dist. Bd. of Ed. v. Doyle,* 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed. 2d 471 (1977). Before the Court can reach the merits of this claim, however, we must examine whether defendants are entitled to qualified immunity from suit, i.e., whether, at the time of Maldonado's discharge, "clearly established law" was violated. The "clearly established law" sought in the case of first amendment claims of dismissal is whether, at the time of Maldonado's firing, it was clearly established that her position was protected from political discharge. Government workers are, and have been protected against dismissal on the basis of their political affiliation unless political affiliation is an appropriate requirement for holding that position. *Branti v. Finkel,* 445 U.S. 507, 519, 100 S.Ct. 1287, 1295, 63 L.Ed.2d 574 (1980).

In *Jiménez Fuentes v. Torres Gaztambide,* 807 F.2d 236 (1st Cir.1986) (en banc), *cert. denied,* —— U.S. ——, 107 S.Ct. 1888, 95 L.Ed.2d 496 (1987), the United States Court of Appeals for the First Circuit set forth a two-part analysis for determining whether political affiliation would be an appropriate requirement for holding the position at issue. If political affiliation or loyalty were such an appropriate requirement, then supervisors are immune from suit for discharging persons based on the employee's politics. *Branti,* 445 U.S. 507, 100 S.Ct. 1287, 63 L.Ed.2d 574 (1980); *Elrod v. Burns,* 427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976). The first part of the analysis is to examine whether the position at issue relates to partisan political interests or concerns. "That is, does the position involve governmental decisionmaking on issues where there is room for political disagreement on goals or their implementation?" Otherwise stated, do party goals or programs affect the direction, pace, or quality of government? *Jiménez Fuentes,* 807 F.2d at 241–42. If satisfied, the second inquiry focuses on the inherent powers of the position to affect the formulation or implementation of those goals. If the position " 'potentially' concern[s] matters of partisan political interest and involve[s] a 'modicum' of policy-making responsibility, access to confidential information, or official communication," then the officials involved are entitled to qualified immunity. *Zayas Rodríguez v. Hernández,* 330 F.2d 1 (1st Cir.1987).

Although defendants have laid claim to qualified immunity, on this first amendment claim, they have presented no evidence as to Maldonado's position or position description. The burden of proof on defendants at this point was to demonstrate a permissible patronage firing. They have failed to present any evidence in this regard and qualified immunity as to the first amendment claim must be DENIED.

On the merits, Lausell and Navarro both submitted sworn statements in support of their motion for summary judgment. The statements aver that Lausell and Navarro had no knowledge of Maldonado's political affiliation. Lack of knowledge on their part would, of course, remove any political motivation behind Maldonado's discharge. Defendants' knowledge of plaintiff's politics is an essential element of Maldonado's claim that she would have to prove. Maldonado initially made the allegation of personal political bias on the part of defendants in her verified complaint. She later supplemented that accusation with a sworn statement in support of her opposition to defendants' motion for summary judgment.

■ This sort of swearing contest cannot be resolved in summary judgment. Whether or not defendants had knowledge of Maldonado's politics is prerequisite to them acting with a bias against those politics. The relative credibility of the parties is not amenable to resolution before the trier of fact has an opportunity to assess them in person. As such, there exists a genuine

issue, credibility, of a material fact, whether Maldonado's discharge was, or even could have been, politically motivated. Defendant's Motion for Summary Judgment on the first amendment claim is DENIED.

### B. *Fourteenth Amendment Claim's Denial of Procedural Due Process*

Maldonado's claim under the fourteenth amendment is that she was a regular career employee for the PRTC. With such a status, she had a continuing property interest in employment. That interest was terminated by PRTC which, as corporation chartered by the Commonwealth, must provide due process of law.[4] Due process of law must be provided before the termination of the property interest. *Loudermill v. Cleveland Bd. of Ed.*, 470 U.S. 532, 542, 105 S.Ct. 1487, 1493, 84 L.Ed.2d 494 (1985).

Defendants argue that the *Loudermill* requirement of a pretermination hearing is inapposite to this case. That defense rests on the fact that Maldonado was discharged on February 22, 1985, while *Loudermill* was decided by the United States Supreme Court nearly one month later, on March 22, 1985. Defendants contend that *Loudermill* should not be given retroactive applicability. At a minimum, defendants further argue, they are entitled to qualified immunity on this fourteenth amendment claim because it was not clearly established in February 1985 that Maldonado would be entitled to a pretermination hearing.[5] *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982).

The United States Court of Appeals for the Eighth Circuit addressed this precise issue in *Peery v. Brakke*, 826 F.2d 740 (8th Cir.1987). Peery was an employee of the South Dakota Department of Agriculture and Brakke was his supervisor. After several unsatisfactory performance appraisals by Brakke, Peery was summoned to Brakke's office at 3:45 p.m. on January 25, 1984. Peery was given the option of resignation by 5:00 p.m. that date or immediate termination. When Peery refused to resign, Brakke handed him notice of immediate discharge, reciting as cause the substance of some of Peery's prior performance appraisals. This discharge was over one year before *Loudermill* was handed down.

■ The Eighth Circuit used the tripartite analysis for retroactive application of a civil decision announced by the Supreme Court in *Chevron Oil v. Huson*, 404 U.S. 97, 92 S.Ct. 349, 30 L.Ed.2d 296 (1971). That analysis poses the following questions: (1) Does the decision to be retroactively applied represent a "clear break" with precedent on which litigants have relied? (2) Would retroactive operation of the rule further or retard operation of the new rule? (3) Could retroactive application result in "substantial inequitable results"? *Chevron*, 404 U.S. at 106–07, 92 S.Ct. at 355. *Peery*, 826 F.2d at 744. The Supreme Court in *Loudermill* clearly noted that the rule requiring a pretermination hearing had "been settled for some time now." *Loudermill*, 470 U.S. at 542, 105 S.Ct. at 1493, *citing Davis v. Scherer*, 468 U.S. 183, 192 n. 10, 104 S.Ct. 3012, 3018 n. 10, 82 L.Ed.2d 139 (1984); and *Davis* 468 U.S. at 200–03, 104 S.Ct. at 3022–23 (Brennan, J., concurring in part and dissenting in part); *see also Peery*, 826 F.2d at 744. *Loudermill* was not, then, a "clear break" with precedent upon which litigants had relied. *Chevron*, 404 U.S. at 106–107, 92 S.Ct. at 355. In support of the finding that a pretermination hearing requirement was well settled, the Supreme Court pointed to *Board of Regents v. Roth*, 408 U.S. 564, 569–70, 92 S.Ct. 2701, 2705, 33 L.Ed.2d 548 (1972), and *Perry v. Sindermann*, 408 U.S. 593, 599, 92 S.Ct. 2694, 2698, 33 L.Ed.2d 570 (1972). These cases, thirteen years old at the time of *Loudermill*, demonstrate neither that retroactive application of

---

**4.** The fourteenth amendment to the United States Constitution provides, in part, "No State shall ... deprive any person of life, liberty, or property, without due process of law." U.S. Const.Amend. XIV.

**5.** On the merits, defendants contend that Maldonado was not entitled to a pretermination hearing because, as an illegal hire, she had obtained no property interest in continued employment.

*Loudermill* would hinder the pretermination hearing requirement nor that substantially inequitable results would accrue from retroactive application of *Loudermill*. This Court finds the Eighth Circuit's analysis sound and therefore holds that *Loudermill* applies to Maldonado's discharge despite the fact that *Loudermill* was announced one month after Maldonado's firing. For the same reasons, i.e., because *Loudermill* presented no clear break with precedent and was well settled, defendants are not entitled to qualified immunity on this procedural due process claim. As to qualified immunity, the motion for partial summary judgment is DENIED.

On the merits, defendants have argued that Maldonado was illegally hired and therefore possessed no property interest for the fourteenth amendment to protect. The property interest at stake is "created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law." *Board of Regents v. Roth*, 408 U.S. at 577, 92 S.Ct. at 2709. The rules establishing any property interest in continued employment at PRTC would be the April 1983 Personnel Regulations promulgated by PRTC. Evidence of noncompliance with these regulations could show that Maldonado's discharge for purported illegal hiring was justified, unless that alleged noncompliance was mere pretext for a politically motivated firing.

Before the Court on this motion for summary judgment motion are sworn statements by Lausell and Navarro that Maldonado's hiring was accomplished in violation of the regulations. Maldonado, in addition to the verified complaint, has submitted a sworn statement to the effect that, to the best of her knowledge, nothing was amiss with the procedure that brought her on board PRTC. Further, in that same statement, Maldonado alleges personal knowledge that persons subsequently hired by PRTC were placed with purported noncompliance with the hiring regulations and that these subsequent hired persons were so placed on the basis of their affiliation with the rival political party, the PDP.

Defendants also submitted to the Court a simple photocopy of what apparently is the Personnel Regulations for PRTC. The photocopy is in Spanish. Local Rule 108 of the United States District Court for the District of Puerto Rico provides that all filings with the Court be in English, a certified translation from whatever language the original documents appear in, or a translation stipulated to by the parties.[6] Defendants have not complied with this rule and the Personnel Regulations are not properly before the Court. We are therefore unable to ascertain what, if any, applicable hiring regulations may have been violated in Maldonado's case.

■ Without a sufficient body of documentary evidence before it, the Court is left with the conflicting sworn statements of the parties. Just as with regard to Maldonado's first amendment claim, this is a genuine issue of material fact. Whether Maldonado had obtained a property interest would depend on such factors as the propriety of her hiring and whether defendants are estopped from arguing that Maldonado had not obtained a property interest. Finally, Maldonado has raised, through her new sworn allegations, that if her hiring was illegal, using that purported illegality as a basis for discharge was nevertheless merely pretext for a politically motivated firing. *Cf. Rosario Torres v. Hernández Colón*, 672 F.Supp. 639 (D.P.R.1987) (subsequent hiring of persons in same manner as discharged NPP-affiliated governmental workers belied claim that sole motivation for latter workers' discharge was "illegal hiring"). This Court cannot resolve these close, factually disputed matters by summary judgment. Defendants' motion for summary Judgment is DENIED.

---

6. *108.1—Translations*
   All documents not in the English language which are presented to or filed in this Court, whether as evidence or otherwise, shall be accompanied at the time of presentation or filing an English translation thereof, unless the Court shall otherwise order. Such English translation shall be certified by the Court Interpreter, except that such certificate may be waived by stipulation of the parties.
   U.S.Dist.Ct.P.R.R. 108.1

### V. *Conclusion*

1. Plaintiff's and Defendants' crossmotions for summary judgment are DENIED.

2. Defendants' motion for partial summary judgment as to qualified immunity are DENIED as to both the first and the fourteenth amendment claims.

3. This case is SET for Further Initial Scheduling Conference on Friday, February 19, 1988, at 10:00 a.m. Because of the age of this case and the apparent familiarity of counsel with their respective contentions, a trial date shall be set within thirty (30) days of this conference.

IT IS SO ORDERED.