UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT

No. 91-1602

METCALF & EDDY, INC.,

Plaintiff, Appellee,

v.

PUERTO RICO AQUEDUCT AND SEWER AUTHORITY,
Defendant, Appellant.

ON REMAND FROM THE SUPREME COURT
OF THE UNITED STATES

Before

Breyer, Chief Judge,

Aldrich, Senior Circuit Judge,

and Selya, Circuit Judge.

Perry M. Rosen, Paige E. Reffe, Thomas D. Roth, Cutler &

Stanfield, Arturo Trias, Hector Melendez Cano, and Trias, Acevedo

& Otero on supplemental brief for appellant.

Peter W. Sipkins, Dorsey & Whitney, Jay A. Garcia-Gregory,

and Fiddler, Gonzalez & Rodriguez on supplemental brief for

appellee.

May 3, 1993

SELYA, Circuit Judge. Notwithstanding that trial is
SELYA, Circuit Judge.

still some distance away, this diversity case alights on our

doorstep for the second time. The appellate roundelay began when

Metcalf & Eddy, Inc. (M&E) sued the Puerto Rico Aqueduct and

Sewer Authority (PRASA) for damages in Puerto Rico's federal

district court. In the course of pretrial proceedings, the court

denied PRASA the benefit of Eleventh Amendment immunity. The

disappointed defendant essayed an interlocutory appeal.

Following circuit precedent, see Libby v. Marshall, 833 F.2d 402

(1st Cir. 1987), we dismissed the appeal for want of

jurisdiction. M&E v. PRASA, 945 F.2d 10, 14 (1st Cir. 1991).

The Supreme Court granted certiorari and, resolving an existing

split in the circuits, determined that pretrial orders granting

or denying Eleventh Amendment immunity were immediately

appealable. PRASA v. M&E, 113 S. Ct. 684, 689 (1993).

PRASA's appeal returns to us on remand from the Supreme

Court. This time around, we must address the merits of the

ruling below. After reviewing supplemental briefs and

considering PRASA's overall relationship with the central

government of Puerto Rico, we affirm the district court's denial

of Eleventh Amendment immunity.

I.

Setting the Stage

Puerto Rico's legislature created PRASA over forty

years ago in order to provide safe drinking water for inhabitants

and to manage wastewater treatment. See P.R. Laws Ann. tit. 22,

2

141-168 (1987 & Supp. 1989). PRASA's stewardship has not been

without blemish. The incident that sparked this suit occurred in

1985, when the United States Environmental Protection Agency

(EPA) brought an enforcement action pursuant to the Clean Water

Act, 33 U.S.C. 1251-1376 (1988), seeking to provoke a

substantial modernization of PRASA's wastewater treatment

facilities.

In due course, PRASA and EPA signed a consent order

limning the changes necessary to bring PRASA's treatment system

into compliance. Toward that end, PRASA hired M&E, a

Massachusetts-based engineering firm with professed expertise in

wastewater management, to oversee the refurbishment. M&E's

duties included contracting for design and construction services

on PRASA's behalf, procuring necessary equipment, and supervising

work on the project. M&E was to be remunerated on a time-plus-

expense basis, invoiced as accrued. Bills were due and payable

within thirty days of presentment.

Over time, project expenditures mushroomed well beyond

budget. As costs mounted, PRASA grew increasingly inhospitable

to M&E's invoices. The denouement occurred when PRASA, amidst

charges of skulduggery, suspended all payments to M&E and

demanded a complete audit. M&E consented to the audit, but did

not acquiesce in the cessation of payments. The audit dragged on

and PRASA accumulated a huge stockpile of M&E invoices. Its

financial plight ingravescent, M&E sued before the audit had run

its course to force payment of the arrearage (roughly

3

$52,000,000).

Confronted by defendant's motion to dismiss, the

district court determined as a matter of law that PRASA did not

enjoy Eleventh Amendment immunity. In so holding, the court

stressed that PRASA possessed the "ability to raise funds for

payment of its contractual obligations" and, thus, its

obligations "do not affect the Commonwealth's funds." PRASA

appeals this decision as a legal rather than a factual matter.

Although there may sometimes be genuine issues of material fact

sufficient to preclude brevis disposition in Eleventh Amendment

litigation, there are none here. Agreeing with PRASA that the

issue in this case is one of law, we afford plenary review to the

district court's denial of immunity. See Dedham Water Co. v.

Cumberland Farms Dairy, Inc., 972 F.2d 453, 457 (1st Cir. 1992);

New England Legal Found. v. Massachusetts Port Auth., 883 F.2d

157, 167 (1st Cir. 1989).

II.

Analysis

A.

The Eleventh Amendment: An Overview

In Chisholm v. Georgia, 2 U.S. (2 Dall.) 419 (1793),

the Supreme Court held that the federal courts had jurisdiction

to hear a South Carolina citizen's suit against the State of

Georgia. This result, popularly perceived as a threat to state

autonomy in a newly minted federal system, produced an

overwhelmingly negative reaction. See Edelman v. Jordan, 415

4

U.S. 651, 662 (1974). Ratification of the Eleventh Amendment

followed apace.1

On its face, the amendment appeared to introduce a

fairly simple proposition into our constitutional jurisprudence.

Nevertheless, driven by the pressure of pragmatic necessity,

judicial sketching of the amendment's scope and requirements has

displayed a creative bent. Under the gloss supplied by this

abstract impressionistic flair, the federal courts now read the

Eleventh Amendment, notwithstanding its plain language, to

prohibit them from hearing most suits brought against a state by

citizens of that or any other state.2 See De Leon Lopez v.

Corporacion Insular de Seguros, 931 F.2d 116, 121 (1st Cir. 1991)

(collecting cases); see also Edelman, 415 U.S. at 662-63.

Withal, there are apertures in the Eleventh Amendment's

protective swaddling. If a case falls within one of these gaps,

the Eleventh Amendment will not bar maintenance of the suit in a

federal court. See Ramirez v. Puerto Rico Fire Serv., 715 F.2d

694, 697, (1st Cir. 1983) (explaining that the Eleventh Amendment

1The Amendment reads:

The Judicial power of the United States
shall not be construed to extend to any suit
in law or equity, commenced or prosecuted
against one of the United States by Citizens
of another State, or by Citizens or Subjects
of any Foreign State.

U.S. Const. amend. XI.

2There is, of course, an exception for prospective
injunctive relief. See, e.g., Ramirez v. Puerto Rico Fire Serv.,

715 F.2d 694, 697 (1st Cir. 1983).

5

"bars federal court lawsuits by private parties insofar as they

attempt to impose liabilities necessarily payable from public

coffers, unless the state has consented to suit or unless the

protective cloak of the amendment has been doffed by waiver or

stripped away by congressional fiat"). Specifically, the

amendment's raiment unravels if any one of four circumstances

eventuates: a state may randomly consent to suit in a federal

forum, see, e.g., Paul N. Howard Co. v. PRASA, 744 F.2d 880, 886

(1st Cir. 1984), cert. denied, 469 U.S. 1191 (1985); a state may

waive its own immunity by statute or the like, see, e.g.,

Edelman, 415 U.S. at 673; Congress may sometimes abrogate state

immunity (so long as it speaks clearly and acts in furtherance of

particular powers), see, e.g., Fitzpatrick v. Bitzer, 427 U.S.

445, 451-54 (1976); or under certain circumstances other

constitutional imperatives may take precedence over the Eleventh

Amendment's federal-court bar, see Pennhurst State Sch. & Hosp.

v. Halderman, 465 U.S. 89, 99 (1984) (involving Fourteenth

Amendment); Bitzer, 427 U.S. at 456 (same).

Here, M&E does not argue that PRASA consented to be

sued, that Puerto Rico waived PRASA's immunity, that Congress

abrogated PRASA's immunity, or that some other provision of the

federal Constitution has usurped the field. Hence, this suit

skirts the gaps. Rather, it is a "pure" Eleventh Amendment case

in which this court must focus on whether PRASA enters the

6

Eleventh Amendment's sphere at all.3

B.

The Test

The mere imprimatur of state authority is insufficient

to inoculate an agency or institution against federal court

jurisdiction. A "slice of state power," without more, will not

sate the Eleventh Amendment. Lake Country Estates, Inc. v. Tahoe

Regional Planning Agency, 440 U.S. 391, 401 (1979). By the same

token and for much the same reasons political subdivisions of

a state, such as municipalities and counties, do not lie within

the Eleventh Amendment's reach. See, e.g., Owen v. City of

Independence, 445 U.S. 622, 650 (1980); Moor v. County of

Alameda, 411 U.S. 693, 717-721 (1973). Only the state itself and

"arms" of the state receive immunity. See PRASA v. M&E, 113 S.

Ct. at 689; Alabama v. Pugh, 438 U.S. 781, 782 (1978); see

generally De Leon Lopez, 931 F.2d at 121 (discussing coverage of

Eleventh Amendment). Because PRASA is not an organic part of the

central government of Puerto Rico, we must investigate whether it

is sufficiently a part of the central government to be considered

an arm of the state. Framed in this way, the question poses an

3We have consistently treated Puerto Rico as if it were a
state for Eleventh Amendment purposes. See, e.g., De Leon Lopez,

931 F.2d at 121; Fred v. Roque, 916 F.2d 37, 38 (1st Cir. 1990);

Paul N. Howard Co., 744 F.2d at 886; Ramirez, 715 F.2d at 697.

Although M&E invites us to revisit this position, we decline the
invitation. In a multi-panel circuit, newly constituted panels,
generally speaking, are bound by prior panel decisions on point.
See United States v. Gomez-Villamizar, 981 F.2d 621, 623 n.9 (1st

Cir. 1992); Jusino v. Zayas, 875 F.2d 986, 993 (1st Cir. 1989).

So it is here.

7

essentially functional inquiry, not easily amenable to bright-

line answers or mechanical solutions.

The Eleventh Amendment's primary concern is to minimize

federal courts' involvement in disbursal of the state fisc. It

follows that "when the action is in essence one for the recovery

of money from the state, the state is the real, substantial party

in interest and is entitled to invoke its sovereign immunity from

suit . . . ." Ford Motor Co. v. Department of Treasury, 323 U.S.

459, 464 (1945); see also Lake Country Estates, 440 U.S. at 400-

01 (identifying the desire to protect state treasuries as a

driving force behind adoption of the Eleventh Amendment); Dugan

v. Rank, 372 U.S. 609, 620 (1963) (recognizing "that a suit is

against the sovereign `if the judgment sought would expend itself

on the public treasury or domain'") (citation omitted); Ainsworth

Aristocrat Int'l Pty. Ltd. v. Tourism Co., 818 F.2d 1034, 1037

(1st Cir. 1987) (similar). Generally, if a state has a legal

obligation to satisfy judgments against an institution out of

public coffers, the institution is protected from federal

adjudication by the Eleventh Amendment. See Quern v. Jordan, 440

U.S. 332, 337 (1979); Reyes v. Supervisor of DEA, 834 F.2d 1093,

1097-98 (1st Cir. 1987).

Because it is not always limpid whether, or to what

extent, the state treasury must stand behind the judgment debts

of a particular institution, we have identified seven related

areas as prospects for further inquiry. These areas, each of

which can be mined for information that might clarify the

8

institution's structure and function, include: (1) whether the

agency has the funding power to enable it to satisfy judgments

without direct state participation or guarantees; (2) whether the

agency's function is governmental or proprietary; (3) whether the

agency is separately incorporated; (4) whether the state exerts

control over the agency, and if so, to what extent; (5) whether

the agency has the power to sue, be sued, and enter contracts in

its own name and right; (6) whether the agency's property is

subject to state taxation; and (7) whether the state has

immunized itself from responsibility for the agency's acts or

omissions. See Ainsworth Aristocrat, 818 F.2d at 1037

(collecting cases from other circuits recounting the same or

similar factors). The list is not an all-inclusive compendium,

for other areas of inquiry may prove fruitful in particular

circumstances. It is, however, clear that all the pertinent

factors have a common orientation: the more tightly the agency

and the state are entangled, the more probable it becomes that

the agency shares the state's Eleventh Amendment immunity.

C.

Applying the Test

In Paul N. Howard Co., supra, we adjudicated a similar

dispute involving PRASA's renitency to make payments due under a

construction contract. 744 F.2d at 881-84. The plaintiff

prevailed in the district court. On appeal, PRASA advanced for

the first time an added defense premised on Eleventh Amendment

immunity. Although we suggested rather strongly that PRASA might

9

"not qualify for immunity under the Eleventh Amendment," id. at

886, we did not conclusively resolve the issue because PRASA had

purposefully availed itself of the federal forum and had thereby

lost whatever entitlement to Eleventh Amendment immunity it might

have possessed with respect to that particular suit. See id.

The case before us today requires that we return to, and resolve,

the question deferred in Howard.4 Faithful to the explication

of legal principles set out above, see supra Part II(B), we first

examine PRASA's access to the public fisc and thereafter

scrutinize how the associated factors are arrayed in this

particular situation.

1. Access to the Commonwealth's Treasury. On the
1. Access to the Commonwealth's Treasury.

principal issue PRASA's access to the Commonwealth's treasury

the die is quickly cast. Puerto Rico's legislature made it

readily evident that PRASA

shall have no power at any time or in any
manner to pledge the credit or taxing power
of the Commonwealth of Puerto Rico or any of
its other political subdivisions. The bonds
and other obligations issued by the Authority
shall not be a debt of the Commonwealth of
Puerto Rico nor of any of its municipalities
nor of its other political subdivisions and
neither the Commonwealth of Puerto Rico nor
any such municipalities nor its other
political subdivisions shall be liable
thereon, nor shall such bonds or other
obligations be paid out of any funds other

4In this quest, we give no weight to the Howard court's

comments concerning PRASA's immunity, for we recognize that, as
dictum, the comments are not binding. That is not to say,
however, that Eleventh Amendment issues must always be resolved
de novo. Where the agency's activity and its relation to the

state remain essentially the same, prior circuit precedent will
be controlling.

10

than those of the Authority.

P.R. Laws Ann. tit. 22, 144. The statute erects a wall between

the agency's appetite and the public fisc. The existence of this

statutory barrier presages the result we must reach: PRASA is

not an arm of the state for Eleventh Amendment purposes.5

PRASA argues that, notwithstanding the Commonwealth's

disavowal of its liabilities, the Commonwealth's significant

financial support of PRASA's activities constitutes the sort of

access to public funds that triggers Eleventh Amendment

protection. We do not agree. Although the central government

subsidizes the agency to some extent, PRASA relies mostly on user

fees and bonds to support its operations. The government does

not give PRASA a blank check or an indeterminant carte blanche

allowing it to draw on the public treasury as it thinks

necessary. Thus, control of the money flow from tax dollars is

unilateral; if the Commonwealth chooses not to open the faucet,

the agency must go thirsty or else, by resort to its own devices,

procure the funds needed to stay liquid.

We think PRASA's situation is not unlike that of a

typical political subdivision. Such an entity often receives

part of its budget from the state and raises the rest

independently. Despite this dual funding, such entities do not

5The statutory barrier is especially important in this case,
for Puerto Rico's legislature has demonstrated that, when it
wishes to do so, it knows exactly how to pledge the
Commonwealth's resources in security for PRASA's debts. See P.R.

Laws Ann. tit. 22, 168 (explicitly agreeing to reimburse the
Farmers Home Administration if PRASA should default on two
particular loans).

11

automatically (or even usually) come within the zone of

protection demarcated by the Eleventh Amendment. Thus, in Mt.

Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274

(1977), the Supreme Court denied Eleventh Amendment sanctuary to

a school board despite the "significant amount of money" it

received from the state. Id. at 280; accord Fitchik v. New

Jersey Transit Rail Operations, Inc., 873 F.2d 655, 660 (3d Cir.)

(denying immunity to a regional rail authority despite state

funding while noting "that an entity derives some of its income

from the state does not mean that it is entitled to partake of

the state's immunity"), cert. denied, 110 S. Ct. 148 (1989); see

also Blake v. Kline, 612 F.2d 718, 723 (3d Cir. 1979)

(recognizing that "the nature of the state's obligation to

contribute may be more important than the size of the

contribution"), cert. denied, 447 U.S. 921 (1980). The case at

bar is cut from much the same cloth.

We hold, therefore, that a state agency cannot claim

Eleventh Amendment immunity solely on the basis that judgments

against it may absorb unrestricted funds donated by the state

and, in that way, redound indirectly to the depletion of the

state's treasury. It follows that PRASA's assertion of Eleventh

Amendment immunity in this case is severely flawed.

2. Other Factors. Although PRASA's inability to draw
2. Other Factors.

on the public fisc cripples its immunity defense, we turn to the

other factors mentioned in the case law in order that our

investigation may be complete. In the circumstances at hand,

12

these factors, taken as an aggregate, corroborate the view that

PRASA does not dwell within the Eleventh Amendment's shelter.

To be sure, the two pans of the scale are not

completely out of balance. PRASA to some extent wields the

state's power; after all, the enabling legislation describes

PRASA's mission to provide water and sewer services as fulfilling

"an essential government function." P.R. Laws Ann. tit. 22,

142. Additionally, neither PRASA nor its revenue bonds are

taxable, see id. 155; PRASA enjoys the power of eminent domain,

see id. 144(e); and the Governor of Puerto Rico appoints five

of PRASA's seven board members, see id. 143.

PRASA places particular emphasis on the fact that its

water and sewage functions are governmental rather than

proprietary and insists that this circumstance renders it an arm

of the state.6 But the nature of PRASA's function is only one

6In arguing this point, PRASA leans heavily on our decision
in Puerto Rico Ports Auth. v. M/V Manhattan Prince, 897 F.2d 1,

12 (1st Cir. 1990). This reliance is mislaid. In Manhattan

Prince, the Ports Authority was acting only as the licensor of

harbor pilots for whom it provided no training and over whom it
exercised no assignment power. The Authority derived no revenue
from the licensing function. Moreover, the legislature had
explicitly made Authority members' misfeasance of the kind
alleged in Manhattan Prince attributable only to the

Commonwealth. See P.R. Laws Ann. tit. 23, 2303(b) (1987).

PRASA's situation is much different; it charges for its services,
controls its total operations, and answers for its own bevues.
Thus, a more apt Ports Authority analogy is found in Royal

Caribbean Corp. v. Puerto Rico Ports Auth., 973 F.2d 8 (1st Cir.

1992). That case involved not licensing, but operation of the
ports. See id. at 9. Because the Ports Authority charged user

fees that supported the costs of its port operations and was
relatively free of central government control, we ruled that it
did not enjoy Eleventh Amendment immunity with respect to its
management of the ports. Id. at 12.

13

part of the equation, and, standing alone, it is insufficient to

bring PRASA behind the Eleventh Amendment's shield. Educational

services, for example, are, like water treatment, a traditional

governmental function. Education, however, has an even longer,

stronger governmental history than water treatment, and as

attendance requirements attest, a more entrenched place in state

government. Yet, despite these more evocative characteristics,

school boards are not immune from suits in federal court. See

Mt. Healthy, 429 U.S. at 280-81 (holding that school board is not

entitled to assert Eleventh Amendment immunity).

On the other side of the scale, a heftier array of

indicators suggests that PRASA is distinct from Puerto Rico's

central government. PRASA has the power to raise funds through

user fees (which, significantly, the Commonwealth, as a water-

and-sewer user, must pay with respect to its own operations).

See P.R. Laws Ann. tit. 22, 158. PRASA also has the right to

raise funds by issuing revenue bonds independently of the central

government. See id. 152. The power and opportunity to

generate a revenue stream and thereby finance an agency's

operations is an important attribute of the agency's separate

identity. Cf. Hernandez-Tirado v. Artau, 874 F.2d 866, 872 (1st

We recognize the seeming anomaly in a single agency
being held to possess Eleventh Amendment immunity for some
functions but not for others. However, the two cases cited above
turned on the nature of the function involved in each instance,
presumably because, in light of the Authority's portfolio of
diverse operations, the question of access to the Commonwealth's
treasury was fuliginous. The case before us is free from this
strain of uncertainty.

14

Cir. 1989) (finding agency to be an arm of the Commonwealth

because the central government had the sole power to raise money

for the agency). Moreover, bondholders must look only to PRASA

for recompense in the event of default. See P.R. Laws Ann. tit.

22, 152(I). Then, too, PRASA is separately incorporated as "an

autonomous government instrumentality." Id. 142. It may sue,

be sued, and enter contracts without the Commonwealth's

particular permission. See id. 144(c), (d). Its funds are

kept entirely separate from the funds of the central government

and are totally controlled by its own board. Last, but surely

not least, the Commonwealth has explicitly insulated itself from

any financial responsibility with respect to PRASA's general debt

and ordinary bonded indebtedness.7 See id. 144.

One more item deserves mention. Whether an agency is

an arm of the state vel non is a matter of federal, not local,

law. See Blake, 612 F.2d at 722. Nevertheless, it is notable

that the district court's view of PRASA as a separate political

subdivision rather than as a part of the central government

comports with that of Puerto Rico's highest tribunal. The Puerto

Rico Supreme Court has consistently concluded that PRASA is not

an alter ego of the central government. The court observed over

7PRASA argues that because its generated revenues (bond
monies and user fees) are "pledged" to current debts and
projects, it will have no money to pay a judgment and any
judgment creditor must, therefore, look to the Commonwealth.
This is specious reasoning. If M&E prevails in this suit, it,
like unsecured judgment creditors from time immemorial, would
bear the risk that it might find few assets available to satisfy
the judgment.

15

forty years ago that the legislature intended PRASA to "be as

amenable to judicial process as any private enterprise would be

under like circumstances . . . ." Arraiza v. Reyes, 70 P.R.R.

583, 587 (1949). More recently, the court reiterated that PRASA

has a "personality separate and apart from that of the

government," and does not have the "sovereign immunity

traditionally enjoyed by the State." Canchani v. C.R.U.V., 105

P.R. Dec. 352, 489 n.2, 490 (1976); see also A.A.A. v. Union

Empleados A.A.A., 105 P.R. Dec. 605, 628 (1976) (stating that

PRASA is "unquestionably framed as a private enterprise or

business and in fact operates as such"). While not dispositive,

consistent decisions of a state's highest court construing an

agency's or institution's relationship with the central

government are important guideposts in a reasoned attempt to

locate the agency's or institution's place within the scheme of

things. See Ainsworth Aristocrat, 818 F.2d at 1037.

3. Assessing the Balance. The upshot is that PRASA
3. Assessing the Balance.

lacks eligibility for Eleventh Amendment immunity on several

levels. First, and most fundamentally, PRASA's inability to tap

the Commonwealth treasury or pledge the Commonwealth's credit

leaves it unable to exercise the power of the purse. On this

basis, PRASA is ill-deserving of Eleventh Amendment protection.

Even putting aside PRASA's fiscal separation from the

central government, we find that the sum total of the secondary

factors preponderates against immunity. While PRASA indisputably

operates with some quantum of state authority, as do many other

16

public utilities, it is readily apparent that Puerto Rico's

legislature chose to structure an arm's-length relationship

between PRASA and the central government. To implement this

relationship, the legislature gave PRASA the power to raise

funds, enter contracts, conceive strategy, and to make its own

operational decisions. As a consequence of the legislative

design, the central government does business with PRASA in the

same manner as with other vendors: it pays for the services it

receives and does not extend any credit or generic funding

guarantees. When all the relevant factors are weighed, the

indicia of separateness countervail the indicia of togetherness.

III.

Conclusion

We need go no further. The profound impact of PRASA's

inability to reach the Commonwealth's treasury, and our

calibrating measurement of the secondary factors, dictate that

PRASA's assertion of immunity must fail. Consequently, we today

confirm the suspicions adumbrated in Howard, 744 F.2d at 886: in

its current incarnation, the Puerto Rico Aqueduct and Sewer

Authority is not safeguarded from federal court jurisdiction by

the Eleventh Amendment. Therefore, the district court's denial

of PRASA's motion to dismiss must be

Affirmed.

17